# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA, EX. REL.
ROBERT C. BAKER,

      Plaintiff,

      v.                                            Civil No. 05-279 WJ/WDS

COMMUNITY HEALTH SYSTEMS, INC.,
EASTERN NEW MEXICO MEDICAL
CENTER; MIMBRES MEMORIAL
HOSPITAL; NORTHEASTERN REGIONAL
HOSPITAL; and HELENA REGIONAL
MEDICAL CENTER,

      Defendants.

## MEMORANDUM OPINION AND ORDER
## GRANTING MOTIONS TO AMEND COMPLAINT

THIS MATTER comes before the Court upon a Motion to Amend/Correct Complaint, filed by Mr. Baker ("Relator") on March 16, 2011 **(Doc. 174)**; and a Motion to Amend Complaint filed by the United States (the "Government") on March 17, 2011 **(Doc. 177)**.[1] Having considered the parties' briefs and the applicable law, I find that both motions are well-taken and shall be granted.

## Background

This action was initiated by Relator's First Amended Complaint filed on April 29, 2005, pursuant to the *qui tam*[2] provisions of the False Claims Act ("FCA"), 31 U.S.C. §§ 3729-33.

---

[1] Because both motions are similar in requested relief, and Defendants have filed one pleading in response to both motions, the Court addresses both motions herein.

[2] A "qui tam action" is an action brought under a statute that allows a private person to sue for a penalty, part of which the government or some specified public institution will receive.

Doc. 3.  The Relator alleges Medicaid fraud based on violations of the False Claims Act, 31 U.S.C. § 3729(a) ("FCA").  Defendants are alleged to have manipulated the Medicaid funding program by a scheme which resulted in the illegal receipt of federally funded Medicaid payments.  The complaints assert that Defendants' donations had a direct or indirect relationship to the Medicaid payments they received in matching federal funds, as a direct result of fraudulent claims made in violation of the False Claims Act, and also as a result of overstating the costs of providing uncompensated indigent care.  The Government filed its own Complaint in Intervention on June 30, 2009.  On July 2, 2009, Relator filed his Second Amended Complaint.

The Relator seeks to add the following parties to the complaint, subsidiaries of Community Health Systems, Inc. ("CHSI"), which is already a named Defendant in this case: CHS/Community Health Systems, Inc. ("CHS/CHSI") and Community Health Systems Professional Services Corporation ("CHSPSC").  The Government seeks to add only CHSPSC to its complaint.

Both the Relator and the Government present the same reasons for their request.  They claim that recent deposition testimony has revealed facts indicating that these subsidiaries participated in the alleged illicit scheme. The Relator contends that Defendant CHSI deposited funds, including Medicaid payments, into a master account held by CHS/CHSI; and also alleges the existence of a corporate-wide policy on donations which required Defendant hospitals to seek approval for the "donations" from officers who were also employees of CHSPSC.  In other words, knowledge and approval of the allegedly fraudulent donations were made by officers who were directors of CHSI, CHS/CHSI and CHI/PCS.  Plaintiffs also seek to amend to correct

---

Black's Law Dict., 7th ed.

typographical errors, revise tables and add additional factual allegations gathered in discovery. The Relator and the Government do not oppose the other's motion. Defendants oppose both motions.

The Relator and the Government ("Plaintiffs" hereinafter) contend that the motions are timely and are not unduly prejudicial, and that the motions seek to add only new parties, and not new claims or new theories. Defendants claim that the motions are foreclosed by undue delay because both the Relator and the Government knew about these corporate defendants for years and chose not to name them in the complaints.

## Discussion

The grant or denial of leave to amend under Fed.R.Civ.P. 15(a) is a matter within the discretion of the trial court. *Zenith Radio Corp. v. Hazeltine Research, Inc*., 401 U.S. 321, 330 (1971); *Foman v. Davis*, 371 U.S. 178, 182 (1962). Although leave to amend is generally freely granted, it will not be permitted where the proposed amendment will be futile, or where the request is untimely and unduly prejudicial to the opposing part. *Castleglen, Inc., et al. v. R.T.C.*, 984 F.2d 1571 (10th Cir. 1993).

**I.     Untimeliness or Undue Delay**

A court may deny leave to amend for untimeliness or undue delay without a showing of prejudice to the other party. *Steinert v. The Winn Group, Inc*., 190 F.R.D. 680, 683 -684 (D.Kan. 2000). "Untimeliness in itself can be a sufficient reason to deny leave to amend, particularly when the movant provides no adequate explanation for the delay." *Panis v. Mission Hills Bank, N.A*., 60 F.3d 1486, 1495 (10th Cir.1995). No finding of a prejudice to the opposing party is required. *Woolsey v. Marion Lab., Inc*., 934 F.2d 1452, 1462 (10th Cir.1991).

All of the cases relied on by Defendants in which those courts denied motions to amend

have fact scenarios quite different from that of the present case. For example, in *Smith v. Aztec Well Servicing Company*, 462 F.3d 1274, 1284-85 (10th Cir. 2006), plaintiffs attempted to raise new claims for the first time at the pretrial conference, ten days after the pretrial order was submitted. In *First City Bank, N.A. v. Air Capitol Aircraft Sales, Inc.*, 820 F.2d 1127 (10th Cir. 1987), defendants did not seek to amend their answer to include additional defenses, counterclaims and third party defendants until two months after the pretrial conference was conducted. In denying their request to amend, the court found that defendants had been dilatory in complying with deadlines throughout the case. In *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1366 (10th Cir. 1993), the court found that the motion to amend was untimely because it was filed four months after the court's deadline for amending pleadings.[3]

In the instant case, the Court granted a *joint* motion to extend the deadline for amending pleadings to March 17, 2011. Doc. 139 (Scheduling Order). The deadline extension in the Scheduling Order does not provide an automatic "pass" for parties wishing to amend a pleading. Under Rule 15(a)(2), parties must still seek leave of the Court to amend, without the other party's written consent to do so. However, the fact that the motions to amend are timely filed within the deadline set in the Scheduling Order militates against Defendants' argument that the motions are untimely. Further, the Scheduling Order also set the termination date for discovery on June 6, 2011, and the deadline for the pretrial order on October 11, 2011. Thus, the motions to amend in this case are filed well in advance of the discovery deadline or the deadline for the pretrial order, rendering the facts here significantly distinguishable from the facts present in

---

[3] The Relator's reply brief goes on to successfully – and accurately – distinguish the circumstances of the instant case from other cases cited by Defendants. *See* Doc. 207 at 5-6 and Doc. 208 at 6 n.4.

*Smith* and *First City Bank* and which persuaded the courts that the motions to amend were untimely.

Defendants argue that the Plaintiffs were aware of the relationship of the CHSI subsidiaries to Defendant CHSI for the four years since the complaints were filed, and challenge Plaintiffs' position that the requested amendments are based upon recent discovery. Defendants also point out that the Relator has been aware of the relationship of CHSPSC to Defendant CHSI, since he was employed by CHSPSC in the Revenue Management Department from November 2001 to November 2004.

Knowledge of the existence of Defendant CHSI's subsidiaries is a separate issue from knowledge of facts which form the basis of a claim. The Government presents considerable evidence to support its position that discovery of CHSPSC's involvement did not come to light until recently. Documents produced by CHSI, on behalf of CHSI, during discovery in 2006-2008 never mentioned CHSPSC (or CHS/CHSI, based on the Court's review of the exhibits). Exs. 1, 2, 3 and 4 to Gov't Reply. CHSI did not mention the existence of CHSPSC until mid-July 2010 in its Answer to the Government's Complaint in Intervention. Even then, CHSI continued to create distance between itself and its subsidiaries which Plaintiffs now seek to name as parties:

> . . . Community Health Systems Professional Services Corporation ("CHSPSC"), which is not a Defendant in this action, is a separate and distinct legal entity from Defendant CHSI. CHSPSC is a management company that provides services to, among others, Defendants Eastern, Mimbres, and Alta Vista. . . .

Doc. 93 at 6, n.1. CHSI also stated at a discovery hearing on February 8, 2011 that: the "[plaintiffs have] named the wrong parties, and with [sic] the appropriate time, we will challenge that." Ex. 9 to Gov't Reply. (Excerpts from Transcript of Proceedings, Feb. 8, 2011, at pp. 26-

7).[4]  In its discovery answers, CHSI avoided disclosing the involvement of its subsidiaries in the alleged fraud.  As recently as December 2010, CHSI objected to the scope of interrogatories which asked CHSI to identify all individuals who participated in the decisions to make donations to the various counties as alleged in the complaints.  Exs. 5 & 7 to Gov't Reply.  Defendants first produced the list of officers and directors of CHSPSC on April 8, 2011.  Ex. 6 to Gov't Reply.  By the time the Government conducted the first depositions in this case in March 2011, CHSI had provided little information regarding CHSPSC (CHS/CHSI), despite the Government's discovery inquiries.  The situation here is very different from the situation in *Frank* because until recently, Defendants' answers to the Government's discovery requests did not provide information to suggest that CHS/CHSI or CHSPSC participated in the scheme.  *Cmp*., *Frank v. U.S. West, Inc*., 3 F.3d at 1366 (plaintiffs knew or should have known long before motion to amend was filed that defendant they sought to add was a possible defendant in the case).

       Defendants object to the addition of Form 64 claims submitted between June 2008 and December 2010 and added by the Government as revised tables to the proposed amended complaint.[5]  Ex. 2 to Gov't Mot., Tables A-E.  Defendants contend that Plaintiffs cannot "claim ignorance" of those claims, and that they knew or should have known of those facts but failed to include them in the original complaint.  However, the former complaints cannot possibly have included allegations concerning claims which post-date those complaints.  The Government's

---

    [4]  The Government disputes the accuracy of CHSI's statement that the wrong parties have been sued.

    [5]  A state must file a "Form 64" quarterly which details the state's actual recorded Medicaid expenditures.  On this form, the state must also report all donations and provider-related taxes received by all counties from any hospital in the State, and must categorize such donations and axes as qualifying or non-qualifying State contributions. *See* Doc. 54 (Defts' Mem. in Supp. of Mot. to Dism.), Ex. 1.

complaint stated that the alleged unlawful donation scheme continued from at least 2000 through June 30, 2009, the date of the complaint. The proposed amendments serve to bring the time frame in the complaint up-to-date.

Finally, Defendants suggest that the allegations even as amended provide no basis for imposing liability on CHSI's subsidiaries.  They contend that as the parent company, CHSI cannot be automatically liable for the acts of its subsidiaries which are distinct corporate identities. Defendants appear to be arguing that the Plaintiffs have not alleged a "unity of interest" with CHSI's parent company, or a theory based on "piercing the corporate veil,"[6] and so Plaintiffs cannot allege liability of CHSI's subsidiaries.  However, Defendants raise this argument in a mere footnote at the end of their response, and provide no case law stating that Plaintiffs are required to include this theory in their complaint. Doc. 201 at 10, n.7.  The Government does not respond to this argument, although the theory has been mentioned at some point.  During a discovery hearing on February 8, 2011, the witness (purportedly an agent of CHSI) stated that he believed that "much of this financial information is apparently intended to determine whether or not they can pierce the corporate veil . . . ."  Ex. 9 to Gov't Reply at 27:6-11. Thus, other than noting that the issue of CHSI's liability for its subsidiaries is a matter which

---

[6] The federal common law doctrine of piercing the corporate veil under an alter ego theory is determined by a two-part test: (1) whether there was such unity of interest and lack of respect given to the separate identity of the corporation by its shareholders that the personalities and assets of the corporation and the individual are indistinct and (2) whether adherence to the corporate fiction would sanction a fraud, promote injustice, or lead to an evasion of legal obligations. *N.L.R.B. v. Greater Kansas City Roofing*, 2 F.3d 1047, 1052 (10th Cir. 1993); *U.S. v. Bestfoods,* 524 U.S. 51, 118 S.Ct. 1876 (U.S.1998) (fact that directors of parent corporation serve as directors of subsidiary may not be enough to expose the parent corporation to liability [under comprehensive Environmental Response, Compensation and Liability Act] for subsidiary's acts; Government would have to show that directors acted in their capacities as parent directors when they committed polluting acts).

will most likely come up again in this litigation, I make no further findings on this issue.

## II.     Prejudice

Defendants do not argue that the amendments would be either unduly prejudicial or futile.  However, the Court notes that some of its findings herein would lead to the conclusion that Defendants would not be unduly prejudiced by the amendments.  First, the request to amend within the deadline contained in the Scheduling Order would undercut any claim of prejudice to Defendants, since the parties clearly envisioned that such amendments might be sought within that time period.  Second, Plaintiffs do not seek to add new claims or theories but rather parties which Defendants have recently disclosed to Plaintiffs as possibly having some role in the alleged scheme.  Ex. 3 to Gov't Reply (describing responsibilities of subsidiaries and services provided by CHSI's subsidiary CHSPSC); *Cmp. George v. HEK America, Inc*.  157 F.R.D. 489, 491 (D.Colo.,1994) (noting that it would be difficult for defendant to argue prejudice in naming parties which defendants themselves have pointed to as being related parties).  As a result, granting the motion to add these entities and to otherwise amend the complaint would not unduly prejudice either the proceeding or the parties.

## Conclusion

I find and conclude that Plaintiffs have demonstrated sufficient reason for the Court to grant the motions to amend. Defendants' contentions of untimeliness and undue delay are unwarranted.

I also find and conclude that the motions are not untimely or otherwise precluded by undue delay.  Until relatively recent discovery, the information provided by Defendants provided no facts surrounding the subsidiaries' role in the alleged fraudulent donation scheme.

Finally, I find and conclude that granting the motions will not result in undue prejudice to

Defendants or undue delay to the proceedings.

    **THEREFORE,**

    **IT IS ORDERED** that the Motion to Amend/Correct Complaint, filed by the Relator **(Doc. 174)**; and the Motion to Amend Complaint by the Government **(Doc. 177)** are hereby GRANTED for reasons described in this Memorandum Opinion and Order.

                                       UNITED STATES DISTRICT JUDGE