IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,
*ex rel.* ROBERT C. BAKER,

    Plaintiffs,

v.                                                                                                        Civ. No. 05-279 WJ/ACT

COMMUNITY HEALTH SYSTEMS, INC., *et al.*,

    Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on Plaintiffs' Motion to Compel Production of Documents Listed on Supplemental Privilege Logs and Redaction Logs, or, in the Alternative, for *In Camera* Review [Doc. 369] (Motion). The parties have submitted their Response [Doc.420] and Reply [Doc. 430]. At the request of the Court, Defendants submitted the documents at issue for an *in camera* review.[1]

### FACTUAL AND PROCEDURAL BACKGROUND

This *qui tam* action was filed in March 2005 pursuant to the False Claims Act, 31 § 3730(b)(2), alleging Medicare and Medicaid Fraud [Doc. 1]. The United States of America (Government) intervened on February 20, 2009 [Doc. 31]. During the four years between the initial filing of the lawsuit by the relator and the Government's intervention, the Department of Justice (DOJ) was actively investigating claims that certain New Mexico hospitals were making non-bona fide donations to the respective counties in order to receive federal dollars for care rendered to indigent patients. In New Mexico, two sources of Medicaid funding to hospitals are the Sole

---

[1] As noted by the parties, the Motion was filed prior to the Court's opinion [Doc. 401] which required counsel to meet and confer in good faith according to the Local Rules of this district. Counsel have met their burden and have substantially reduced the number of documents at issue.

Community Provider (SCP) fund and the Sole Community Provider Supplemental Payment (SCP Supplemental Payment) program. The State's share of these programs to hospitals must be funded by county and local governments. The sources of funding were created by the State Legislature in order to provide greater care to the indigent population in counties that are willing to contribute state-share dollars for sole community hospitals servicing their region. Through SCP payments, New Mexico hospitals serving counties and local communities that contribute to the SCP fund receive a federal match of approximately $3.00 for every $1.00 the county or local government contributes.

This case is based on Defendants' alleged pursuit of Medicaid payments from the Government through improper manipulation of the New Mexico SCP Fund and the SCP Supplemental Payments program. It is alleged that Defendants made donations that were in fact "pass through" payments because these payments simply enabled the counties to pledge funds to the SCP and in turn cause the State to return to Defendants the purported donation, along with the federal matching funds. The allegation is that because Defendants knew their contributions to the SCP fund were ineligible for federal matching, they falsely characterized those payments as "unrestricted donations" in an effort to make them appear bona fide. A provider-related donation is bona fide only if it has no direct or indirect relationship to Medicaid payments to the health care provider. Plaintiffs allege that Defendants' donations had a direct or indirect relationship to the Medicaid payments they received under the SCP fund or SCP Supplemental Payments program and therefore were non-bona fide transactions.

## LAW REGARDING ATTORNEY–CLIENT PRIVILEGE

"Rule 501 of the Federal Rules of Evidence provides that in the federal system, the attorney-client privilege will be governed by the principles of the common law. Fed.R.Evid. 501."

*United States v. Lopez*, 777 F.2d 543, 550 (10th Cir. 1985). The Court of Appeals for the Tenth Circuit has held that when both federal claims and pendent state law claims are implicated, the court should consider both bodies of law. *Sprague v. Thorn Ams., Inc.*, 129 F.3d 1355, 1369 (10th Cir. 1997). Because only federal law is implicated in this case, New Mexico law does not apply.

"The lawyer-client privilege rests on the need for the advocate and counselor to know all that relates to the client's reasons for seeking representation if the professional mission is to be carried out." *Trammel v. United States*, 445 U.S. 40, 51(1980). The privilege's purpose is "to encourage clients to make full disclosure to their attorneys." *Fisher v. United States*, 425 U.S. 391, 403 (1976). "The [attorney-client] privilege protects 'confidential communications by a client to an attorney made in order to obtain legal assistance' from the attorney in his capacity as a legal advisor." *Matter of Grand Jury Subpoena Duces Tecum Issued on June 9, 1982, to Custodian of Records*, 697 F.2d 277, 278 (10th Cir.1983) (quoting *Fisher*, 425 U.S. at 403). Furthermore, "[t]he privilege is to be construed narrowly." *Id*.

The privilege applies to communications from the lawyer if those communications would reveal the client's confidential communications. *In re Grand Jury Proceedings*, 616 F.3d 1172, 1182 (10th Cir. 2010). Thus, a lawyer's communications are privileged only if (1) they contain legal advice, or (2) tend directly or indirectly to reveal the client's confidences. *Id.* (citing *United States v. Defazio*, 899 F.23d 626, 635 (7th Cir. 1990)). When attorneys reveal information or facts acquired from other persons or sources, those facts are not privileged. *Id*. This is so even when the information so obtained is being related by the attorney to the client in the form of advice. *Id*. at 1182-83. "Legal advice or communications, standing alone, should not automatically receive protection. Instead, the party asserting the privilege must show that such advice relates to prior

3

confidential client communications." *Anaya v. CBS Broadcasting, Inc.*, 251 F.R.D. 645, 650 (D.N.M. 2007); Fed.R.Evid. 501.

"An in-house counsel's communications regarding business matters, management decisions, and business advice, which neither solicit nor predominantly deliver legal advice are not privileged." *Anaya*, 251 F.R.D. at 650 (citing 6 James Wm. Moore, *Moore's Federal Practice* § 26.49[4] at 26-182 (3d ed. 1997)). "Including an attorney as a 'cc' addressee or on the distribution list of an interoffice e-mail communication sent to several people does not transform the e-mail into a privileged attorney-client communication." *Id*. (citing *In re Gabapentin Patent Litig.*, 214 F.R.D. 178, 186 (D.N.J. 2003)). "'Correspondence that merely transmits documents to or from an attorney, even at the attorney's request for purposes of rendering legal advice to a client, are neither privileged nor attorney work product.'" *Lindley*, 267 F.R.D. at 401 (quoting *Guidry v. Jen Marine LLC*, 2003 WL 22038377, *2 (E.D. La. 2003) (unpublished decision)).

"'Drafts of documents prepared by an attorney for transmission to third parties are protected by the attorney-client privilege only where the draft document contains confidential information communicated by the client to the attorney that is maintained in confidence.'" *Lindley*, 267 F.R.D. at 404 (quoting *Softview Computer Prods. Corp. v. Haworth, Inc.*, 2000 WL 351411, *15 (S.D.N.Y. 2000) (unpublished decision)).

## LAW REGARDING WORK PRODUCT IMMUNITY

"The goal of the attorney work product doctrine is to protect an attorney's subjective analysis and substantive efforts in, or in anticipation of, litigation from use by the adverse party." *Lindley v. Life Investors Ins. Co.*, 267 F.R.D. 382, 388 (N.D. Okla. 2010) (internal quotation marks & citation omitted). "However, because all privileges are 'in derogation of the search for truth,' both [the attorney client privilege and the work product doctrine] are narrowly construed." The party

4

asserting the protection has the burden of "clearly showing" that it applies. *Id*. The work-product privilege applies only to "attorneys' or legal representatives mental impressions, conclusions, opinions, or legal theories authored in anticipation of litigation." *Grace United Methodist Church v. City of Cheyenne*, 451 F.3d 643, 668 (10th Cir. 2006). Fact work product is not absolutely privileged and discovery of fact or non-opinion work product may be compelled in some circumstances. *In re Quest Communications Int'l, Inc.*, 450 F.3d 1179, 1186 (10th Cir. 2006).

"Establishing work-product protection often depends on a showing that there was a reasonable threat of litigation and that the threat was the motivation for creating the document(s) in question". *Id*. at 394. "'In anticipation of litigation' contains two related, but nevertheless distinct, concepts. One is temporal. The other is motivational." *Id*. (quoting *United States ex rel. Fago v. M & T. Mortgage Corp.*, 238 F.R.D. 3, 6 (D.D.C. 2006)). As explained by the court, the critical inquiry is whether the document would have been created regardless of the anticipated litigation. *Id*. Moreover, "[d]ocuments created for business reasons do not become privileged simply because they are tendered to in-house counsel." *Id*. at n. 11

> As stated by one authority,
>
>> documents prepared in anticipation of a government investigation are not accorded work-product protection. . . . Yet, once a government investigation is begun, many courts concede that litigation may not be far behind. And therefore documents that are prepared after a government investigation is already underway may well be accorded work-product protection.

Edna Selan Epstein, The Attorney-Client Privilege and the Work Product Doctrine, Vol. II at 831 (5th Ed. 2007).

"Prudent parties anticipate litigation and begin preparation prior to the time suit is formally commenced. Thus the test should be whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained

5

because of the prospect of litigation." 8 Charles A. Wright, *et al.*, Federal Practice and Procedure, § 2024, p. 343 (1994 ed.).

In *Christensen v. American Family Mutual Ins. Co.*, 2011 WL 3841293 (D. Utah 2011) (unpublished opinion), the insurance company claimed work product immunity to several files and documents. For one such document, the insurance company argued that it was not discoverable because it involved "a discussion with in-house legal counsel about the facts of the [bad faith] claim and an analysis directly with in-house legal of the exposure if and when the matter proceeds to formal litigation." *Id*. At *5. The court held that the document was discoverable because the insurance company "fails to demonstrate that the document was prepared in anticipation of litigation or trial or that it represents the mental impressions, conclusions, opinions, or legal theories of in-house counsel in preparation for trial." *Id*.

## DECLARATIONS

Declaration of Larry M. Carlton [Doc. 420-1]

Defendants have submitted the Declaration of Larry M. Carlton, Senior Vice President for Revenue Management for Community Health Systems Professional Services Corporation (CHSPSC), stating that he prepared document nos. 91, 95, 97, 134, 194, 294, 295, 296, and 297, and the attachments to document Nos. 133, 135, and 138, for general counsel Rachel Seifert (Seifert) "in connection with an investigation being conducted by the United States Department of Justice." Carlton Declaration, ¶¶ 3-4. He also claims that document Nos. 96, 289, 290, 291, 292, 344-6 through 344-11 and 344-13 through 344-19 were prepared for Seifert in connection with the allegations advanced by Robert Baker in this litigation and that they were prepared by Lisa Parrish and Nathan Summar at Carlton's request. *Id*. at ¶ 5. It was his understanding that all of these documents were to be shared with outside litigation counsel. *Id*. at ¶¶ 3-5.

6

Declaration of Leanne Hacker [Doc. 420-2]

Defendants also submitted the Declaration of Leanne Hacker, the Chief Financial Officer of Roswell Hospital Corporation d/b/a Eastern New Mexico Medical Center (the Hospital). Ms. Hacker says it is her handwriting that appears on the first two pages of document No. 242 and that she prepared document Nos. 284 and 298 at the direction of James Buck, outside counsel for the Hospital, in connection with another lawsuit, *Roswell Hospital Corp. v. Sisneros et al.*, Civ. 2008-485 (Chaves County, N.M.). Hacker Declaration, ¶¶ 2-4.

## DISCUSSION

The Defendants have asserted attorney client privilege and work product with respect to all documents in question. The Defendants seem to take the position that any document that was shared with counsel or prepared at the request of counsel should be protected by the attorney client privilege or the attorney work product doctrine. The Defendants' position is not well taken. As noted by Ms. Epstein in her treatise:

> It never ceases to astound how often parties assume that because certain facts have been communicated to an attorney the very fact of the communication shields the facts from compelled disclosure. Nothing could be further from what the law requires. Facts remain discoverable regardless of to whom they have been conveyed.

Edna Selan Epstein, The Attorney-Client Privilege and the Work Product Doctrine, Vol. I at 88 (5th Ed. 2007).

It is incumbent upon the party asserting privilege or immunity -- and the tests are not the same -- to show why the document should not be produced, the Court requires production when it is not obvious that the documents should be withheld. *See Barclays-American Corporation v. Kane*, 746 F.2d 653 (10th Cir.1984). "[T]he party seeking to assert the attorney-client privilege or the work product doctrine as a bar to discovery has the burden of establishing that either or both is

7

applicable." *Id*. at 656. The law is well settled that failure to produce a privilege log or production of an inadequate privilege log may be deemed waiver of the privilege. *See, e.g., Peat, Marwick, Mitchell & Co. v. West,* 748 F.2d 540, 542 (10th Cir.1984); *Dorf & Stanton Communications, Inc. v. Molson Breweries*, 100 F.3d 919, 923 (Fed. Cir.1996).

The Privilege Logs and Redaction Logs submitted by the Defendants do little more than recite the date and the names of the recipients of the e-mails, memoranda, or other documents referenced in the logs and are replete with the general comment that the documents relate to "requests for information" or were "prepared at direction of counsel in connection with the *Baker* litigation."[2] A proper privilege log should contain the following information:

(1) A description of the document (*e.g.*, correspondence, memorandum);

(2) Date prepared;

(3) Date of document if different from No. 2;

(4) Identity of the person(s) who prepared the document, including information sufficient to allow the Court to determine whether the document is a communication from the client's attorney and/or whether it was prepared by or for the client or by or fore one of the representatives;

(5) Identity of the person(s) for whom the document was prepared and to whom the document was directed (including all copies), including information sufficient to allow the Court to determine whether the document is a communication to the client;

(6) Purpose of preparing the document;

---

[2] Just because a document was prepared at the request of counsel doesn't make it privileged or immune from production, particularly if it contains only factual information. To receive protection, the document must have been prepared for the purpose of rendering legal advice and intended to be kept confidential. *Williams v. Sprint/United Management Co.*, 2006 WL 1867478, *7 (D. Kan. 2006) (unpublished decision).

(7) Number of pages of the document;

(8) Basis for withholding discovery of the document, *i.e.*, the specific privilege or protection being asserted; and

(9) Any other pertinent information necessary to establish the elements of each asserted privilege.

*Hill v. McHenry*, 2002 U.S. Dist. LEXUS 6637 at *8 (D. Kan. April 10, 2002). The Defendants' Privilege and Redaction Logs are woefully inadequate. For that reason, the Court requested that the documents be submitted for *in camera* review.

The Court has reviewed all of the documents submitted and will refer to them as they were numbered on the Privilege and Redaction Logs. The following documents need not be produced as they are covered by either the attorney client privilege or work product doctrine: Privilege Log Nos. 91, 116-3, 146, 256-4, 256-6, 256-13, 294, 295, 296, 297, 343-6, 368, 455, 505, 519 and 730; Redaction Log Nos. 16, 17, and 19. The remaining documents will be produced for the following reasons.

### **Privilege Logs**

Privilege Logs 95, 96, and 97. These are memoranda containing factual information about New Mexico Medicaid Supplemental Payment Programs. Even if these documents were prepared "at the request of counsel," the documents do not discloses client confidential communications, legal advice, or the mental impressions, conclusions, opinions, or legal theories of counsel.

Privilege Logs 133, 134 and 135 . These are e-mail strings forwarding a draft of a Talking Points memo regarding New Mexico SCH and SCH Supplemental Payments for September 2008. The attached Talking Points memo was apparently prepared at the request of counsel, but according to Doc. 135 it was intended to be shared with lobbyists. Neither the e-mails nor the memo disclose

9

client confidential communications, legal advice, or the mental impressions, conclusions, opinions, or legal theories of counsel.

Privilege Log 138. Additional e-mail string forwarding the same document attached to Doc. Nos. 133, 134, and 135. The last e-mail states "this is the version I shared yesterday with Butch Maki." Mr. Maki is not identified by title or position, but based on subsequent documents reviewed by the Court, it appears he is a lobbyist.

Privilege Log 155. E-mail to in-house counsel Seifert and top management concerning lobbyists. This e-mail does not disclose client confidential communications, legal advice, or the mental impressions, conclusions, opinions, or legal theories of counsel.

Privilege Log 194. Attachment referred to in Log No. 95, *supra*.

Privilege Log 234 and 245. E-mail string on which in-house and outside counsel are copied. The referenced attachments are factual. None of the e-mails or the attachments disclose client confidential communications, legal advice, or the mental impressions, conclusions, opinions, or legal theories of counsel.

Privilege Log 242. Defendants assert this is a "document reflecting information provided at the direction of counsel." Counsel is not identified; the handwritten notes have been identified as belonging to Ms. Hacker (a non-lawyer); and the recipients are not identified. There is a banner at the bottom stating "Confidential Business Information," but this is not noted as an objection on the Privilege Log, which merely states the information was provided at the request of outside counsel and the privilege claimed is attorney-client/work product. These conclusory statements are of no help to the Court and are insufficient to carry Defendants' burden that privilege or immunity attaches. The information contained in these documents is factual and of the type prepared in the

ordinary course of business. The document does not disclose client confidential communications, legal advice, or the mental impressions, conclusions, opinions, or legal theories of counsel.

Privilege Log 284 and 298. These are the documents prepared by Ms. Hacker at the direction of counsel in connection with state-court litigation. The information in the documents is factual and does not contain client confidential communications, legal advice, or the mental impressions, conclusions, opinions, or legal theories of counsel.

Privilege Log 289 through 293. These documents were "prepared at the direction of counsel in connection with the *Baker* litigation" but they contain only factual information and are unsigned, undated, and mostly unreadable. There is nothing to indicate that they contain client confidential communications, legal advice, or the mental impressions, conclusions, opinions, or legal theories of counsel.

Privilege Log 344-6. This is an undated interoffice memorandum reflecting how donations were calculated. Although there is a header stating it was "prepared at request of counsel," there is nothing in the memo that conveys client confidential communications, legal advice, or the mental impressions, conclusions, opinions, or legal theories of counsel.

Privilege Log 344-18. This is a 2006 memorandum outlining an action plan followed by Lisa Parrish in gathering information about New Mexico Medicaid supplemental payments. The memorandum is factual and does not convey client confidential communications, legal advice, or the mental impressions, conclusions, opinions, or legal theories of counsel.

Privilege Log 344-7 through 344-17; 344-19. These documents were referenced in the Carlton Declaration as being prepared at the request of in-house counsel Seifert. They show Medicaid Support Payments' analyses for several states, including New Mexico, and other data, all of which appear to be factual in nature. The documents do not convey client confidential

communications, legal advice, or the mental impressions, conclusions, opinions, or legal theories of counsel.

Privilege Log 455. This is an intra-office memo providing a summary of recent events. It is largely factual and will be produced in redacted form. In addition to the redaction already done on the copy provided to the Court, the last line of the second paragraph may also be redacted.

Privilege Log 592. This is an intra-office e-mail in 2009 confirming language in a press release. It is neither privileged nor work product because it does not disclose client confidential communications, legal advice, or the mental impressions, conclusions, opinions, or legal theories of counsel.

Privilege Log 599 and 602. These are intra-office e-mails confirming that the DOJ will proceed with a lawsuit and forwarding a draft of a holding statement and adding that outside counsel will meet with the CHS Board of Directors. Nothing in the e-mail contains client confidential communications, legal advice, or the mental impressions, conclusions, opinions, or legal theories of counsel.

Privilege Log 633. This is an e-mail string and New Mexico Hospital Association Bill Tracker memorandum concerning pending legislation. Although the e-mail is to in-house counsel Seifert, there is nothing in the e-mail string or Bill Tracker that contains client confidential communications, legal advice, or the mental impressions, conclusions, opinions, or legal theories of counsel.

Privilege Log 642-1, -2, -3. This is a 2010 e-mail string, on which outside counsel were copied. The information in the e-mails is factual and the referenced attachments have not been provided. The e-mails themselves do not contain client confidential communications, legal advice, or the mental impressions, conclusions, opinions, or legal theories of counsel.

Privilege Log 691. This is a 2009 e-mail from CHS corporate with copies to in-house and outside counsel concerning the motion to dismiss and forwarding drafts of letters to county managers, internal communications to hospitals not named in the complaint, and a media holding statement. The e-mails and the draft documents contain factual information and position statements, which mention legal strategy to some extent, but which on their face were intended to be shared with members of the public.

**Redaction Logs**

None of the redacted documents indicate the grounds on which the documents were being redacted before production. If it is obvious to the Court why the redacted material was being withheld, those portions have not been ordered to be produced.

Redaction Log 19. This is a document production form signed by Leonard Tapia who states he can find no documents responsive to some unknown request. There appears to be nothing redacted and the Court cannot tell why this document was included. It does not contain client confidential communications, legal advice, or the mental impressions, conclusions, opinions, or legal theories of counsel.

Redaction Log 23. This is a 2010 memo and the redacted sentence merely states: "Our attorneys wanted to review language [of the MOA] and made some changes" The e-mail does not contain client confidential communications, legal advice, or the mental impressions, conclusions, opinions, or legal theories of counsel.

Redaction Log 31. This is a form signed by Ms. Hacker confirming information in "Attachment A" (which was not provided to the Court), and identifying where she searched for the information. It does not contain client confidential communications, legal advice, or the mental impressions, conclusions, opinions, or legal theories of counsel.

Redaction Log 55.  These are e-mails which include outside counsel.  The Court could not identify any redaction.  These e-mails do not contain client confidential communications, legal advice, or the mental impressions, conclusions, opinions, or legal theories of counsel.

IT IS THEREFORE ORDERED that Plaintiffs' Motion to Compel Production of Documents Listed on Supplemental Privilege Logs and Redaction Logs, or, in the Alternative, for *In Camera Review* [Doc. 369] is granted in part and denied in part as stated herein.

_____
Alan C. Torgerson
United States Magistrate Judge