# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

_____

UNITED S TATES OF AMERICA, *ex rel.*
ROBERT C. BAKER,

      Plaintiffs,

    v.                                      Civil No. 05-279 WJ/ACT

COMMUNITY HEALTH SYSTEMS, INC. et al.,

      Defendants.

## MEMORANDUM OPINION AND ORDER OVERRULING OBJECTIONS TO MAGISTRATE JUDGE'S REPORT AND RECOMMENDATIONS

THIS MATTER comes before the Court upon the Government's Objections to the August 31, 2012 Magistrate Judge's Report and Recommendation, filed September 14, 2012 (**Doc. 539**). Having reviewed the parties' briefs and applicable law, I find that the Government's objections are not well-taken and, accordingly, are OVERRULED.

## BACKGROUND

This is a qui tam case alleging Medicaid fraud based on violations of the False Claims Act, 31 U.S.C. § 3729(a) ("FCA"). Defendants are alleged to have manipulated the Medicaid funding program by a scheme which resulted in the illegal receipt of federally funded Medicaid payments. Relator Robert C. Baker initially filed the action on April 29, 2005 (Doc. 1). The Government, through the Department of Justice ("DOJ"), filed its Notice of Intervention on February 20, 2009 (Doc. 31). The facts of this case are fully set out in *United States of America, ex rel. Baker v. Community Health Systems, Inc*., 709 F. Supp.2d 1084 (D.N.M. 2010) and other

Memoranda Opinions and Orders entered in this case and will not be repeated here except as necessary.

On June 18, 2012, United States Magistrate Judge Alan C. Torgerson held a lengthy hearing on Defendants' Motion for Sanctions against the United States of America (Doc. 373). Defendants' motion claimed, *inter alia,* that the DOJ acted in bad faith in connection with the destruction of documents of two key officials from the Centers for Medicare and Medicaid Services ("CMS") (DOJ and CMS collectively, the "Government") and failed to make timely efforts to recover those documents.

Following the hearing, Judge Torgerson issued findings in a Report and Recommendation ("R&R"), concluded that the Government was culpable for its failure to issue a timely and an adequate litigation hold, and recommended sanctions. Doc. 538 at 30.  The Government has filed objections to the recommended sanctions (Doc. 539), and Defendants have responded to the Government's objections (Doc. 541).

## DISCUSSION

Defendants' motion was premised on three main arguments: (1) the DOJ litigation hold was untimely; (2) the litigation hold was inadequate, causing the destruction of relevant evidence; and (3) due to the destruction of this relevant evidence, Defendants are prejudiced and are entitled to sanctions, including an adverse inference or dismissal.

## I.     Legal Standard

The motion for sanctions was referred by the Court to Judge Torgerson pursuant to 28 U.S.C. § 636(b)(1)(B), which provides for *de novo review* regarding dispositive matters. As defendants have noted, despite the reference to § 636(b)(1)(B), the matter taken up by Judge Torgerson involves non-dispositive discovery sanctions, which are generally reviewed under a

clearly erroneous standard. *See* 28 U.S.C. § 636(b)(1)(A); *Ocelot Oil Corp v. Sparrow Industries,* 847 F.2d 1458, 1465 (10th Cir. 1988) (magistrate judge may grant non-dispositive fee aspect and recommend treatment of dispositive sanction requested); *Segal v. L.C. Hohne Contractors, Inc.,* 303 F.Supp.2d 790, 794-95 (S.D.W.Va. 2004) (reviewing magistrate's judge's discovery order under a clearly erroneous standard where the magistrate judge did not issue an order dispositive of the action); *First Union Mortg. Corp. v. Smith*, 229 F.3d 992, 995 (10th Cir. 2000) (explaining difference in standard of review for dispositive and non-dispositive matters).

While the Court's reference to § 636(b)(1)(B) in the Order of Reference was obviously an oversight, the Court will proceed to review the R&R under a *de novo* standard. When conducting de novo review, the district court makes its own determinations of disputed issues and does not decide whether the magistrate's proposed findings are clearly erroneous. *Gee v. Estes*, 829 F.2d 1005, 1009 (10th Cir.1987.

The Court sees no need to repeat the detailed findings of the R&R because it sets out the facts in detail, referring to evidence admitted at the hearing, and to the hearing transcript, *see* Doc. 510 (hereinafter,"Tr."). What follows is a general overview of Judge Torgerson's findings in light of the Government's objections and the Court's review..

## II.     Timeliness and Adequacy of Litigation Hold

Judge Torgerson found that the Government's litigation hold was both untimely and inadequate.

The Government first served notice on Defendants to issue a litigation hold to preserve evidence in December of 2005, a few months after the Relator filed the initial complaint. On June 12, 2008, the DOJ reminded the New Mexico State Human Services Division ("HSD") of its continuing duty to preserve potentially relevant documents, including suspending routine

deletion measures.  The Government did not intervene until February 20, 2009, but it had been investigating this case since 2005, and had also been engaged in ongoing negotiations with Defendants since 2007, until September 5, 2008, when defense counsel sent the DOJ a lengthy letter rejecting the Government's offer to settle the case.  The Government did not initiate its own litigation hold until the day it intervened, on February 20, 2009.  The Government seems to have been sufficiently aware of the importance of preserving documents to remind HSD of its duty to preserve documents, but did not impose a similar obligation on itself until over three years later.

The litigation hold was most critical with respect to two individuals: James Frizzera ("Frizzera") and Robert Cowan ("Cowan"). Frizzera was a Division Director for the Centers for Medicare and Medicaid Services ("CMS") from 2006 to December 2008, when he retired. As Director, he had review oversight of CMS's approval of federal Medicaid payments to the State of New Mexico, and thus was generally considered to be the most informed person about the donations and taxes that are the main elements of this case.  He was familiar with the Relator's Complaint, and was aware of the 2006 Financial Management Review ("FMR") prepared in Dallas by John Castro ("Castro Report").  The Castro Report showed that at least four New Mexico hospitals were making the same donations Defendants were alleged to be making. Castro shared his findings with certain State officials in an exit interview, but the Castro Report itself was never released, and there is conflicting testimony on whether the report was suppressed at DOJ's request.

Cowan was the CMS New Mexico Financial Analyst from 2007 until his retirement in September 2010, and was principally responsible for reviewing the State's Form 64 claims and preparing the regional decision reports which authorized the State's Medicaid funding. The next

report addressing these issues was not prepared until the 2009 FMR, which showed 13 hospitals allegedly making improper donations (the "Branch Report"). Cowan prepared a Findings Attribute Report ("FAR") at some time prior to the Branch Report which stated that the root cause of the donation problem was the way the State, the counties and the hospitals understood the regulations.

Judge Torgerson rejected the Government's argument that Frizzera and Cowan were not "key players" and challenged the importance of these "lost documents" which were stored electronically ("ESI," or "electronically stored information). Relying on the statements made at the hearing, Judge Torgerson noted that the Government ultimately conceded (albeit "begrudgingly") that the duty to preserve documents includes documents that might be of help to the Defendants.  See Doc. 538, ¶ 48. This was a wise concession on the Government's part, since by now the Court has become familiar enough with the parties' argument to  unequivocally agree with Defendants, and with Judge Torgerson, that the findings on the Castro Report and the FAR are crucial to Defendant's scienter defense.

A.      Objections to Legal Conclusions

One of the Government's main objections relates to Judge Torgerson's findings concerning the relevance and importance of documents going to the "government knowledge inference" as one of the affirmative defenses. The Government also objects to the R&R in that it made recommendations on legal conclusions on this issue when it is still in dispute. The Court overrules all aspects of this objection. This Court has previously denied the Government's motion to strike Defendants' affirmative defense of "government knowledge inference." Doc. 366 at 12.  Further, the R&R did not recommend a determination of a legal issue; rather, it noted that Defendants were precluded from access to documents that would allow them to present

evidence in support of their position on that issue.  Thus, the Court agrees with Judge Torgerson's finding that the evidence which illuminates the Government's knowledge is crucial to Defendants' defense, and overrules the Government's objection.

The attorney in charge of the litigation hold issued to CMS was Dawn Popp ("Popp"). The R&R found that although Popp worked closely with Frizzera, and despite knowing he had retired in early December of 2008, Popp did not alert Frizzera's supervisor or anyone else of the importance of preserving his ESI once the litigation hold was in place in February of 2009, nor did she personally take any steps to preserve Frizzera's ESI.  Since Frizzera had retired in early December, 2008, his e-mails would have been available had the Government initiated a timely litigation hold; the ESI could have been sequestered and placed on a disc for preservation had the DOJ made a timely request.

Evidence was presented that the auto-deletion of computer files and e-mails which follow an employee's departure could have been avoided or halted in order to preserve documents. Prior to 2010, e-mails could be placed on a shared drive which was accessible to Lockheed Martin, CMS' contractor and system administrator. Also, even when the backup tape is erased, some information may be left behind which the administrator may be able to pull up.  Judge Torgerson noted that an initial search of the shared drive was conducted by Lockheed Martin, CMS' contractor, but that no additional forensic searches were done.

Cowan was still employed at CMS when the litigation hold went into effect. Although he retired in September of 2010, there was no effort to identify and preserve his documents until sometime in December 2010.  His documents were initially preserved, but were later found to be missing. The R&R noted that because of a change in policy in 2010 at the Office of Information Services ("OIS"), e-mails were no longer saved on the shared drive. However, the e-mails could

have been preserved by downloading them onto a disc, and Judge Torgerson found that the fact that this did not happen suggested a "lackadaisical attitude" with which the Government approached its ongoing duty to monitor the litigation hold. In general, Popp and others involved in the hold took no steps to contact specific individuals to ensure that appropriate measure were in fact being taken, and instead assumed that the directive relating to a litigation hold would somehow "trickle down" to the appropriate personnel.

In considering these facts, the Magistrate Judge applied the general spoliation rule, which is that the duty to preserve documents arises once a party "reasonably anticipates litigation." *See Zubulake v. UBS Warbug,* LLC, 220 F.R.D. 212, 218 (S.D.N.Y. 2003).  It is not sufficient "to notify all employees of a litigation hold and expect that the party will then retain and produce all relevant information." *Id.* (emphasis by the court). "Counsel must take affirmative steps to monitor compliance so that all sources of discoverable information are identified and searched. Counsel is under a continuing duty to ensure preservation." *Id.* (emphasis added). Based on the facts and testimony presented at the hearing, Judge Torgerson rejected the Government's position that it did not and could not have reasonably anticipated litigation and therefore had no duty to issue a litigation hold until the very day it received permission from the DOJ to proceed with intervention and filed its Notice of Intervention on February 20, 2009. Instead, Judge Torgerson found that the Government's intervention was reasonably foreseeable after receipt of defense counsel's letter rejecting the Government's offer of settlement on September 5, 2008. Judge Torgerson also gave the Government the benefit of the doubt and applied an "imminent" standard as set forth by the Tenth Circuit Court of Appeals in *Burlington Northern and Santa Fe Rwy. v. Grant,* 505 F.3d 1013 (10th Cir. 2007), and came to the same conclusion.[1]

---

[1]  " Spoliation sanctions are proper when '(1) a party has a duty to preserve evidence because it knew, or should have known, that litigation was imminent, and (2) the adverse party was prejudiced by the destruction of the

Based on this Court's *de novo* review of the relevant dates, the evidence and testimony presented at the hearing and the course of this lawsuit's litigation, the Court agrees with Judge Torgerson's findings concerning the timing and adequacy of the Government's litigation hold.

B.     Objections to Factual Findings

The Government has also raised objections to certain factual findings in the R&R.  These objections have no merit and all are overruled because they do not show that any of the factual findings are erroneous. The essence of the Government's objections is that the R&R did not reject certain facts based on the Government's spin on those facts. For example, the Government objects to Judge Torgerson's factual finding that "Defendants show that Cowan's FAR was not incorporated into the Branch Report."  Doc. 538 at ¶ 29.  The Government argues that "Mr. Branch testified that he was not instructed to exclude from his report information contained in the FAR. . . ."  Judge Torgerson's finding had nothing to do with any directives Mr. Branch may or may not have been given; it simply stated that the information in the FAR was not included in the Branch Report.  As another example, the Government objects to Judge Torgerson's finding that Popp "was unaware of CMS' document retention policies." Doc. 538 at ¶ 33.  The Government argues that Popp's testimony was not related to retention policies but to policies related to litigation holds. It is true that the questions directed to Popp at the hearing referred to "litigation holds" rather than "retention policies." Tr. at 171-172.[2]  This objection is totally irrelevant to the import of the R&R's factual findings on this issue.  As Defendants note, the critical aspects of Popp's testimony are that (1) she was charged with implementing a litigation

---

evidence.'" *Turner v. Public Service Co. of Colo.*, 563 F.3d 1136, 1149 (10th Cir. 2009) (quoting *Burlington N. & Santa Fe Ry. Co. v. Grant*, 505 F.3d 1013, 1032 (10th Cir. 2007)).   However, it has been noted that *Burlington* "merely noted that imminent litigation was sufficient, not that it was necessary for spoliation. . . ." *Micron Tech., Inc. v. Rambus, Inc.*, 645 F.3d 1311, 1320 (Fed.Cir. 2011).

[2]  During cross-examination, however, Ms. Popp was asked if there had been any communications between her and agency personnel "regarding document retention on matters related to Baker prior to the litigation hold. . . ." Tr. at 510.

hold within CMS; (2) she was fully aware of Frizzera's significance to the Government's investigation and this litigation, but took no affirmative steps to preserve his ESI upon his retirement even though Frizzera still been employed at CMS when the belated litigation hold was issued; (3) Frizzera's ESI would have been within the scope of the hold had he not retired; and (4) Popp waited almost a month to circulate a litigation hold within CMS even when DOJ finally issued a litigation hold to CMS. These factual findings are supported by evidence and testimony presented at the hearing, and thus the Court finds no error.

The Court sees no need to recite here the flaws in every one of the Government's objections to Judge Torgerson's factual findings. None of them cast any question on the factual findings in the R&R. The Court overrules those objections, holding that Judge Torgerson's findings are correct, based on the testimony and evidence presented.

## III.    Sanctions

Courts consider a variety of facts when deciding whether to sanction a party for the spoliation of evidence, two of which generally carry the most weight: (1) the degree of culpability of the party who lost or destroyed the evidence; and (2) the degree of actual prejudice to the other party." *Patten v. Target Corp.*, 2009 WL 1279331, *3 (D. Colo. 2009) (unpublished opinion) (internal quotations & citations omitted).

In their motion for sanctions, Defendants requested sanctions beyond what Judge Torgerson ultimately recommended, such as an adverse inference that the destroyed documents would have been exculpatory in demonstrating government knowledge of the provider donations; monetary sanctions; and dismissal of certain claims arising prior to February 20, 2009, the date on which the Department of Justice issued a belated litigation hold to CMS.

Instead, Judge Torgerson recommended the following sanctions:

(A) The Government will produce all documents being withheld under a claim of ordinary work product or deliberative process privilege which discuss the withholding of the 2006 Castro Report and any drafts of the Branch Report;

(B) The Government will produce all e-mails from or to Frizzera and Cowan, or on which they were copied, regardless of whether they are being withheld under a claim of work product immunity, attorney client privilege, or deliberative process privilege. This production must include, but is not limited to, the documents identified in the Government's Privilege Log, Court's Exhibit 3, Tab 1 as documents 625 and 626;[3]

(C) The Defendants are entitled to recover their reasonable attorney fees and costs associated with their Motion for Sanctions [Doc. 373], including fees for the briefing, appearances at the June 18, 2012 hearing, and the follow up briefing on closing arguments; and

(D) The Government must show cause in writing within twenty (20) calendar days of the entry of this Report and Recommendation why it should not be required to conduct an additional forensic search of the shared drives in the CMS Central Office and Dallas Regional Office for the ESI of Frizzera and Cowan. Defendants may file a response within ten (10) calendar days of the Government's submission. No reply will be allowed.  After the Court has reviewed the submissions, it will decide whether an additional forensic search of the shared drive will be done at the Government's expense.

Doc. 538 at 30.

A.      Culpability and Prejudice

---

[3] Doc. ID number 625 is an e-mail authored by Troy Barsky, Elizabeth Rinaldo and Julie Ford. Doc. ID number 626 is an e-mail authored by Troy Barsky, James Frizzera, Kristin Fan, Elizabeth Rinaldo and Julie Ford.  The e-mails are described in the privilege log as "[c]onfidential e-mail correspondence between agency personnel and agency counsel, prepared in anticipation of litigation and containing legal advice and regarding contemplated agency action."  These are part of the Court's exhibits presented at the hearing, and can also be found on the Court docket as Doc. 374-3, filed 12/09/11.

In this case, Judge Torgerson found that the Government's misconduct may not rise to the level of bad faith or willful misconduct, but that its pre-litigation attempts to preserve ESI and other documents were "woefully inadequate and go beyond mere negligence." Doc. 538, ¶ 56. Judge Torgerson also found that Defendants have shown prejudice because the ESI that was lost or destroyed goes to a critical issue, and at best the evidence at hand is conflicting. Although both Frizzera and Cowan have been deposed, each was "hampered by their ability to remember certain facts and circumstances," including information contained in their reports based on the Castro Report. Doc. 510 (hearing transcript at 22-23). This is understandable, since as witnesses they would be required to recall facts and events in the operative period which goes back at least ten years. Thus far, Defendants have relied on what they can piece together by viewing entries on the Government's privilege log.

In short, there is overwhelming evidence that Defendants are prejudiced by not having available the documents generated by Frizzera and Cowan, since these documents go directly to what the Court considers to be one of their strongest defense theories. Judge Torgerson summed up the crux of the defense exactly the way this Court views the matter: why did the Government allow improper donations to continue from 2006 to the present day? Doc. 538 at ¶62. This Court is sufficiently familiar with the facts of this case to state unequivocally that there is evidence (although disputed) that certain individuals at HSD as well as the federal agency, CMS, knew about the non-reporting of allegedly non-bona fide donations by the hospitals on the State's Form 64 claims.

In addition to claiming that Frizzera and Cowan are not key players, the Government contends that Defendants do not need the lost ESI documents generated by these witnesses, because they already have independent evidence on the relevant topics. The Court agrees with

Judge Torgerson's findings on this issue, in that the cases cited by the Government are not

analogous because in those cases the defendants did have independent evidence on the relevant

topics.  This is not what is going on here. The Government's objection to the relevance of these

documents is untenable. The Court has already addressed this issue in a previous Memorandum

Opinion and Order:

> The "Government knowledge inference" arises when the Government knows and
> approves of the facts underlying an allegedly false claim prior to presentment.
> *Burlbaw v. Orenduff*, 548 F.3d at 951-952. The Government's knowledge of an
> alleged "false" claim contradicts a defendant's intent to knowingly submit a false
> claim. Since the crux of an FCA violation is intentionally deceiving the
> Government, no violation exists where the Government has not been deceived.
> *U.S. ex rel. Englund v. Los Angeles County*, 2006 WL 3097941, 12
> (E.D.Cal.,2006) (citing *Ex rel. Butler v. Hughes Helicopters, Inc*., 71 F.3d 321,
> 327 (9th Cir. 1995) and *Wang v. FMC Corp*., 975 F.2d 1412, 1421 (9th Cir.
> 1992)). The "Government knowledge" defense holds that the "knowing"
> submission of a false claim is logically impossible when responsible Government
> officials have been fully apprised of all relevant information. *U.S. ex rel. Lamers
> v. City of Green Bay*, 998 F.Supp. 971, 988 (E.D.Wis.,1998).

Doc. 366 at 12. Thus, the Court overrules the Government's objections relating to the necessity

of the ESI and other documents generated by Frizzera and Cowan.  For example, while the

Government disputes that the reason for withholding the report, the reality is that Defendants

have been denied access to evidence which may support their position on the Government's

knowledge of the source of the hospital providers' donations, or any of their other assertions

related to the key issues in their defense.  Therefore, the Court overrules the Government's

objections related to the relevance or cumulative nature of the lost ESI documents as self-serving

and without merit.

B.    Work Product and Attorney Client Privilege

Making things even more complicated for Defendants is the fact that the Government is

withholding ESI documents which go to the issues described above based on work product

immunity, deliberative process, and attorney client privilege. Judge Torgerson noted that "this is a case of the Government attempting to use the work product doctrine, the deliberative process privilege, and the attorney client privilege as both a sword and shield."  Doc. 538 at ¶ 67.

The Court agrees with this assessment. A litigant "cannot use the work product doctrine as both a sword and a shield by selectively using the privileged documents to prove a point but then invoking the privilege to prevent an opponent from challenging the assertion." *Frontier Refining, Inc. v. Gorman-Rupp Co., Inc.*, 136 F.3d 695, 704 (10th Cir. 1998).  Judge Torgerson noted that by destroying ESI that may be relevant to certain important issues and at the same time refusing to produce documents that exist, the Government has essentially prevented Defendants from testing the assertions posed by the Government, namely (1) that Cowan and Frizzera were not key players; (2)  that the 2006 FMR was not withheld at the request of Frizzera or the DOJ; and that none of the withheld documents or ESI support Defendants' assertions. Judge Torgerson concluded by recommending that the privileges and immunities asserted by the Government regarding these documents and ESI were overridden by the fairness doctrine. *See In Re Grand Jury Proceedings,* 219 F.3d 175, 185, 191 (2d Cir. 2000).[4]  The R&R further noted that Defendants show substantial need for this information but are unable to obtain this information from any other source.  Frizzera was involved from the beginning of the investigation of this case in 2005, and Cowan had substantial involvement with the funding issues central to this case.  Doc. 538 at ¶ 68.

Not surprisingly, the Government objects to these findings as well, arguing that the recommended sanctions are out of proportion to the resulting prejudice to Defendants and pointing out that it has already provided to Defendants over 9700 total pages of documents from

---

[4]  *See also In re Grand Jury Proceedings v. United States,* 350 F.3d 299, 306 (2nd Cir. 2003) (noting particular "type of unfairness" to adversary when a party "uses an assertion of fact to influence the decisionmaker while denying its adversary access to privileged material potentially capable of rebutting the assertion").

Mr. Frizzera and over 1800 pages of documents from Mr. Cowan.  This is all well and good, but the sheer number of pages may have very little to do with the nature and relevance of the documents. As Judge Torgerson noted, "The documents are lost. The fact is that there is no way of verifying [whether the documents support either party's claims or defenses], and this is caused directly by the government's conduct in handling these documents."  Doc. 538 at ¶ 69 (citing *U.S. v. Holzmann,* 2007 WL 781941, *1 (D.D.C. 2007) (unpublished opinion). The Court agrees with this conclusion.

## CONCLUSION

"Spoliation includes the intentional or negligent destruction or loss of tangible and relevant evidence which impairs a party's ability to prove or defend a claim. Sanctions for spoliation serve three distinct remedial purposes: punishment, accuracy, and compensation." *United States ex rel. Koch v. Koch Ind., Inc.*, 197 F.R.D. 488, 490 (N.D. Okla. 1999).

The sanctions recommended in the R&R are not punitive in nature. They are designed to uncover as best they can (since at this point in time some documents may have been irretrievably destroyed) evidence which attempts to make available evidence which should have been preserved and disclosed to Defendants.  *Id.* ("Sanctions for spoliation may also be designed to promote accurate fact finding by the court or jury."). They also are designed to prevent the Government to benefit from its apathetic conduct in preserving documents that were clearly meant to be preserved,  when it had ample reason to believe the documents and ESI should have been preserved for some time prior to the litigation hold.  *See Reilly v. Natwest Markets Group Inc.*, 181 F.3d 253, 267-68 (2nd Cir. 1999) ("it is important for trial judges who are tailoring sanctions to insure "that spoliators do not benefit from their wrongdoing . . . .").

The Court has reviewed the R&R and the basis from which Judge Torgerson came to his recommended findings and conclusions.  The ESI and documents which were lost by virtue of the belated litigation hold are critical to one of the Defendants' theories of defense.  Not having access to these documents could severely undercut their ability to defend on that theory.  Without knowing what is missing, it is impossible to take the Government at its word that the missing or destroyed documents are either irrelevant or cumulative.

The Court also finds that the recommended sanctions are not out of proportion to the Government's conduct.  While Judge Torgerson did not find bad faith or intentional misconduct on the part of the Government, he did find sufficient culpability to warrant the sanctions that are recommended—which are considerably less than what Defendants requested.  This Court finds that conduct egregious enough to warrant these sanctions as appropriate and necessary. The Government will no doubt entail some expense in the further production of documents as recommended by Judge Torgerson, and this expense could be considerable should the Government be required to conduct an additional forensic search of the shared drives in the CMS Central Office and Dallas Regional Office for the ESI of Frizzera and Cowan.  However, the recommendation is that the Government will be required to show cause in writing as to why this process is not necessary, and the Court agrees that the Government should be given this opportunity.

**THEREFORE,**

**IT IS ORDERED** that the Court  OVERRULES the Government's Objections to the August 31, 2012 Magistrate Judge's Report and Recommendation (**Doc. 539**);

**IT IS FURTHER ORDERED** that Government shall comply with the sanctions recommended by Judge Torgerson;

**IT IS FINALLY ORDERED** that this matter is referred to Judge Torgerson for the following:

(1) to set deadlines if necessary, regarding the production of relevant documents and for the submission of Defendants' request for fees and costs associated with their Motion for Sanctions (Doc. 373), as described in the recommended sanctions;

(2)  to make findings on the reasonableness of Defendants' request for fees and costs;

(3) to consider and make findings regarding the Government's response showing cause as to why it should not be required to conduct an additional forensic search as described in the recommended sanctions; and

(4) any other matters associated with the parties' compliance with the recommended sanctions.

_____
UNITED STATES DISTRICT JUDGE