IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO


UNITED STATES ex rel. ROBERT C. BAKER,

    Plaintiffs,

v.                                                Case No. 05-cv-279 WJ/GBW

COMMUNITY HEALTH SYSTEMS, INC., *et al.*,

    Defendants.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

THIS MATTER is before the Court on Defendants' Motion For Scheduling Conference And For Entry of An Amended Scheduling Order (Expedited Consideration Requested). *Doc. 635.* I have reviewed the motion and accompanying briefing, and have conducted a hearing in this matter. *Docs. 640, 641, 642, 643.* I recommend that the Court DENY Defendants' Motion.

**I.    BACKGROUND**

This extensive and complex litigation, filed in 2005, is a *qui tam* action brought under the False Claims Act, 31 U.S.C. § 3729(a). The facts of this case have been recited extensively in prior Court orders, so I will limit my recitation to those details pertinent here. *See, e.g., doc. 616.* Plaintiffs contend that Defendants, all New Mexico private hospitals, violated federal law when they made non-*bona fide*, unreported donations to the Sole Community Provider Program (SCP), a state program that facilitates the

funding of New Mexico's Medicaid program.[1]  Defendants contend that the donations were made at the direction of the State of New Mexico Human Services Department (NMHSD), which manages the Medicaid program and that the State is solely responsible for failing to report their donations to the federal government.

Discovery in this case closed in September 2011.  On December 9, 2011, Defendants filed a motion for sanctions against Plaintiff United States, contending that it had both spoliated, and improperly withheld, certain discovery from Defendants.  *Doc. 373.*  On August 31, 2012, Magistrate Judge Torgerson filed his Proposed Findings and Recommended Disposition (PFRD), in which he agreed with Defendants' position and recommended ordering the United States to produce "all documents being withheld under a claim of ordinary work product or deliberative process privilege which discuss the withholding of the 2006 Castro Report and any drafts of the Branch Report" and "all e-mails from or to [James] Frizzera and [Robert] Cowan, or on which they were copied, regardless of whether they are being withheld under a claim of work product immunity, attorney client privilege, or deliberative process privilege."[2]  *Doc. 538* at 30.  The PFRD was adopted on October 3, 2012.  *Doc. 544.*

---

[1] Medicaid is funded by a federal/state partnership whereby the state submits its Medicaid expenditures to the federal government on a quarterly basis and the federal government contributes accordingly.  *See doc. 616* at 1-2.
[2] Mr. Frizzera was a Division Director at the Centers for Medicaid and Medicare Services (CMS), a part of the federal Department of Health and Human Services, from 2005-2008.  *Doc. 538* at 11. Mr. Cowan was the CMS Financial Analyst for the State of New Mexico from 2007-September 2010.  *Id.*

The parties agree that, between August 2012 and October 2012, approximately 111,000 pages of documents were produced to Defendants in response to the Magistrate Judge's PFRD.  *Docs. 635, 642*.  On December 3 and 21, 2012, approximately 550 pages of documents were finally produced.  *Doc. 642*, Ex. 1.  Certain of these documents were used by Defendants as supplemental exhibits to their motion for summary judgment which were filed on March 12, 2013.  *Docs. 578, 643*.

In September 2013, Defendants filed an IPRA request with NMHSD, in response to which NMHSD produced 15,000 pages of documents.  Defendants concede these documents had some overlap with prior productions by Plaintiffs.

On April 1, 2014, Defendants filed the instant motion, seeking the entry of an amended scheduling order.  Relevant here, the motion seeks to reopen discovery to allow the parties to supplement their expert reports and to conduct the depositions[3] of six people:  Mr. Frizzera; Kristin Fan, another Director of Financial Management Group at CMS; a 30(b)(6) deponent for CMS; Carolyn Ingram, the former director of the New Mexico Medical Assistance Division of NMHSD; Julie Weinberg, the current director of MAD; and Anna Bransford, a current coordinator of the SCP.[4]

---

[3] For example, I do not doubt that the supplemental expert reports would then merit rebuttal.

[4] Defendants also asks for a new deadline for the submission of the proposed pretrial order and for the scheduling of a *Daubert* hearing.  The parties have stipulated to the new pretrial order deadline and the District Judge has not referred the *Daubert* matter to the undersigned.  *See doc. 636*, n.1.  As such, these additional requests will not be analyzed.

3

II.  **LEGAL STANDARD**

The district court has broad discretion over the management of discovery, including whether to extend discovery beyond its close.  *Smith v. United States*, 834 F.2d 166, 169 (10th Cir. 1987).  In determining whether discovery should be reopened, the Court should consider a variety of factors, including:

> 1) whether trial is imminent, 2) whether the request is opposed, 3) whether the non-moving party would be prejudiced, 4) whether the moving party was diligent in obtaining discovery within the guidelines established by the court, 5) the foreseeability of the need for additional discovery in light of the time allowed for discovery by the district court, and 6) the likelihood that the discovery will lead to relevant evidence.

*Id.* (citation omitted).

III.  **ANALYSIS**

   A.   **Scope of Recommendation**

As an initial matter, in Defendants' reply brief, they appeared to contend that I should not consider whether discovery should be reopened, but only the extent to which it should:

> "First, the reopening of depositions of six witnesses, especially CMS witnesses, **seems implicit** in the sanctions order entered against DOJ, **consistent with Defendants' colloquy** with the District Court at the January 28, 2014 status conference, and **consonant with the District Court's order referring Defendants' motion to this Court to make recommendations regarding the extent of any further discovery which should be allowed and deadlines for the same**[.]"

*Doc. 642* at 4 (emphasis added).  When pressed at oral argument, Defendants retreated from this position, instead claiming that they merely wished to ensure that the

4

presiding judge retained jurisdiction over any *Daubert* hearings. If Defendants' concern was so limited, the question is unambiguously addressed in the operative order of reference which states that "*Daubert* motions will be scheduled and heard by the District Judge assigned to this case." *Doc. 636* at 2 n.1. In any case, Defendants have conceded that my recommendations should consider whether discovery should be reopened at all.

      **B.**      **Smith Factors Do Not Support Reopening of Discovery**

          1.     <u>Imminence of Trial</u>

Defendants argue that, because the first day of trial is more than five months away, it is not imminent. However, imminence is necessarily a contextual determination. It must take into account, *inter alia,* the complexity of the case and the length of the litigation as a whole. This highly complex, highly contested case has been pending for several years. We are now, after extensive motion practice (including a series of dispositive motions) five and a half months away from the trial which is anticipated by all to last a month. *See In re Indep. Serv. Org. Antitrust Litig.*, No. MDL-1021, 1998 WL 919125, at *3 (D. Kan. Dec. 31, 1998)(noting that even if a trial "is not literally imminent, reopening discovery for six months would likely lead to a corresponding delay in the remand and trial of this case."); *Solano v. Am. Bankers Ins. Co. of Fla.*, No. 05-1510, 2009 WL 103633, at *1 (D. Colo. Jan. 14, 2009)(refusing to reopen discovery with trial 5.5 months away). Moreover, the additional discovery sought by

Defendants is not amenable to being conducted up to the eve of trial. Instead, the augmentation to expert disclosures and the depositions Defendants seek are items of such potential significance that they must be completed well before the parties submit their trial roadmap in the form of the proposed pretrial order. Pursuant to the parties' agreement, the proposed pretrial order must be filed with the Court by July 31, 2014. Given these circumstances, the trial is indeed imminent. This factor weighs against reopening discovery.

      2.    <u>Prejudice</u>

The imminence of the trial leads directly to the most significant prejudice that would be caused by reopening discovery at this point – the likely and long delay of the trial. Defendants blithely assert that these six depositions could be accomplished in six weeks and that neither the information produced from them nor the supplementation of the expert reports would delay the trial's start. *See doc. 635*. This optimism is self-serving and unrealistic.

As to the depositions, it is true that, in the ordinary case with typical witnesses, counsel can complete six depositions in six weeks. Unfortunately, neither of these premises applies here. None of the individuals Defendants seek to depose are typical fact witnesses. Their testimony will relate to their management of complex regulatory and financial programs. The extent of the preparation necessary for their depositions is evident by the fact that the non-party State of New Mexico, the employer/former

employer of three of the individuals, has filed separately beseeching the Court not to permit their depositions. *See doc. 640.* The necessary coordination between counsel and witnesses for preparation and between opposing counsel to schedule these depositions will be very difficult. Admittedly, as Defendants' counsel argued, discovery in litigation is almost always challenging. However, as discussed below, the unrealistically compressed time frame for the proposed additional discovery is the direct result of Defendants' delay in seeking it. I conclude that permitting the additional depositions will almost certainly lead to the vacatur of the trial date.

As to the expert report supplementations, Defendants seek to significantly expand the opinions presented by their experts. Permitting such will inexorably lead to new rebuttal from Plaintiffs' experts. *See doc. 641* at 18-20. As with the depositions, I conclude that permitting supplementation of the expert reports will likely lead to the vacatur of the trial date.

Also significant is the practical impact of losing the current trial date. As noted above, the Court has carved out a month for the trial in this case. As counsel is well aware, the criminal docket in this District makes setting aside such an extensive period of time for a civil trial extremely difficult. Therefore, if the additional discovery necessitates even a small continuance in the trial date, the reality of the docket will lead to a new trial date many months, if not a year, later.

The prejudice from reopening discovery would be significant, including both a likely significant delay to the trial and significant expense to a non-party. This factor weighs against reopening discovery.

3. <u>Opposition</u>

Defendants' request is opposed by the relator and the United States. It is also opposed by non-party, the State of New Mexico. This factor weighs against reopening discovery.

4. <u>Foreseeability and Diligence</u>

Defendants' primary argument is relevant to these factors. Defendants contend that the additional depositions that they seek and the additional supplementation to the expert reports are a direct result of the discovery only provided by the United States pursuant to this Court's finding of spoliation. *See doc. 538*. Certainly, they argue, the misconduct described in that order justifies additional discovery on the basis of the belatedly produced discovery. Without question, had Defendants promptly sought the reopening to conduct the depositions and/or to permit the supplementation of expert reports, I would have recommended granting the same. Unfortunately, they did not.

Defendants received the bulk of the discovery required by the spoliation order by November 15, 2012. *See doc. 642*, Ex.1. The last of those documents were produced on December 21, 2012. *See id*. Notwithstanding the volume of documents produced, Defendants had reviewed the new disclosures no later than March 12, 2013 and used

8

certain of them as supplemental exhibits.  *See doc. 578*.  Thus, it is undisputed that Defendants waited between twelve and fifteen months to ask the Court for the additional discovery they now seek.[5]  I find this delay to be inexcusable.

To the extent Defendants argue that, in early 2013, the need for additional discovery was not foreseeable,[6] I cannot agree.  Repeatedly in the hearing on the instant motion, defense counsel referred to the additional discovery as crucial without any assertion that its importance was not apparent upon the review of the late 2012 disclosures.  Defendants point to no particular event or document, after January 2013, which materially changed their perception of the need for the additional discovery they now seek.

The only explanation given by Defendants as to why they waited more than a year to file the instant motion is efficiency.  They point out that they were waiting for rulings on their pending summary judgment motions and it would have been inefficient to seek further discovery until after they were resolved.  Unfortunately, Defendants never sought concurrence for such an approach from the opposing parties, let alone an appropriate order from the Court.  Instead, Defendants gambled, hoping

---

[5] Defendants drop mentions of a final set of documents which they obtained through an IPRA request to NMHSD.  These documents were obtained in September 2013.  I do not find the date of the IPRA disclosure significant to this motion because (i) Defendants do not contend that these documents were responsive to formal discovery requests within the litigation but were not produced; and (ii) Defendants fail to point to any particular document in the IPRA disclosure which suddenly altered the calculus about the need for additional discovery.

[6] It appears that Defendants do not make this argument.  Instead they repeatedly point out that the need was not foreseeable prior to the disclosures in late 2012.  As far as that goes, I agree.  However, the lack of foreseeability until then does not excuse the subsequent delay by Defendants.

9

that they could prevail on summary judgment or reach a successful settlement and save themselves the expense and effort of these further depositions. Now that those avenues have not borne fruit, they seek to have the Court recognize their unilateral stay *nunc pro tunc*. I will not recommend it do so.

Yes, Plaintiff was found to have improperly withheld evidence in 2012. And Plaintiff was sanctioned appropriately at the time. *See United States v. Philip Morris, Inc.*, 347 F.3d 951, 954 (D.C. Cir. 2003)("As the federal rules, case law and commentators suggest, waiver of a privilege is a serious sanction most suitable for cases of unjustified delay, inexcusable conduct, and bad faith."). Had Defendants sought the additional discovery near in time to receiving the withheld documents, they would have received it. However, they were not diligent in pursuing additional discovery. I will not ignore their lack of diligence because of Plaintiff's prior bad acts. *SIL-FLO, Inc. v. SFHC, Inc.*, 917 F.2d 1507, 1514 (10th Cir. 1990)(declining to re-open discovery in part because "[t]he record suggests that the [the party requesting discovery] did not make diligent use of the long period the court originally provided for discovery. . . ."). The additional discovery sought by Defendants was foreseeable more than a year before they filed this motion. The delay was the result of Defendants' lack of diligence in seeking additional discovery. Both these factors weigh against reopening discovery.

10

     5.     <u>Likelihood of Additional Discovery Leading to Relevant Evidence</u>

Defendants do not seek to reopen discovery completely – only to conduct the six identified depositions and supplement their expert reports. It is the limited nature of their request on which they base their claim that the trial date would not be impacted by the requested discovery. As such, they are not looking to obtain information which will then lead them to other relevant evidence. With respect to the expert reports, they seek only to broaden the opinions that their experts may express at trial. With respect to the depositions, they will be getting those witnesses "on the record" as to the proffered questions. While I understand the motivations behind these purposes, it does mean that the additional discovery is not really designed to lead to additional relevant evidence. Defense counsel has stated that the individuals Defendants seek to depose will be witnesses at the trial. Therefore, Defendants will have the opportunity to pose their questions at trial, albeit without the foreknowledge of deposition answers. This factor weighs against reopening discovery.

In sum, I find that trial is imminent. All other interested parties oppose and would be seriously prejudiced by permitting the additional discovery. Defendants were manifestly not diligent in seeking such discovery which has been foreseeable for more than a year. Finally, the additional discovery is not so likely to lead to relevant evidence as to override the other factors – all of which weigh against Defendants' request. For these reasons, I recommend Defendants' request be denied.

### B. The Proposed Amended Scheduling Order is Adopted in Part

Attached to their motion as Exhibit A, Defendants include a proposed scheduling order that sets dates for proposed depositions and supplemental expert reports, as well as a *Daubert* hearing and deadline for consolidated pre-trial order.

For the reasons discussed in Section A, there is no need to set a deadline for further discovery. As to the date of the *Daubert*, hearing, I leave that to the discretion of the District Judge. Finally, in their briefing, and at the hearing, Plaintiffs agreed to a pretrial order deadline of July 31, 2014, with Plaintiffs submitting their consolidated pretrial order to Defendants on July 17, 2014. I will therefore adopt that deadline alone.

### IV. CONCLUSION

For the forgoing reasons, I recommend that Defendants' motion to reopen discovery be denied, and that the amended scheduling order be adopted in part.

_____
UNITED STATES MAGISTRATE JUDGE

> **THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**