## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO
_____

UNITED STATES OF AMERICA,
ex rel ROBERT C. BAKER,

       Plaintiffs,

     vs.                                 Civ. No. 05-279 WJ/GBW

COMMUNITY HEALTH SYSTEMS, INC.,
et al.,

       Defendants.

### MEMORANDUM OPINION AND ORDER SUSTAINING DEFENDANTS' OBJECTIONS TO MAGISTRATE JUDGE'S REPORT AND RECOMMENDATIONS
### and
### REJECTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATIONS
### and
### REFERRING DISCOVERY SCHEDULE TO MAGISTRATE JUDGE

THIS MATTER comes before the Court following a hearing upon Defendants' Objections to Magistrate Judge's Report and Recommendations, filed May 7, 2014 **(Doc. 645).** Having considered Defendants' objections, Plaintiffs' response to those objections, and counsel's arguments at the hearing, and finding Defendants' objections to have merit, the Court sustains the objections and will permit limited discovery.    The Court also refers the case to U.S. Magistrate Judge Gregory B. Wormuth to enter a scheduling order for limited additional discovery.

### BACKGROUND

This is a qui tam case, in which Defendants, all New Mexico private hospitals, allegedly violated the False Claims Act, 31 U.S.C. §3729(a)(1)(A) and §3729(a)(1)(B) (formerly

§3729(a)(1) and (a)(2)), by causing the submission of false claims by the New Mexico Medicaid agency seeking matching federal funding of its programs providing health care for indigent residents of New Mexico.   The Court recently ruled on dispositive motions, denying them for the most part, but partially granting one of Defendants' summary judgment motions on certain claims.   *See* Doc. 647.   After the Court's ruling on those motions, Defendants sought to reopen discovery for the limited purpose of taking depositions of six "key" witnesses who are employees of either HSD or CMS ("Centers for Medicare and Medicaid"), and to allow their expert Bryan Jones to supplemental his rebuttal based on the late disclosures by the State and federal government of numerous discovery materials after discovery deadlines ended. Defendants' motion to amend the scheduling order in order to allow additional discovery (Doc. 635) was referred to Judge Wormuth (Doc. 636) for a recommendation of ultimate disposition.

## I.      Magistrate Judge's Recommendations

Judge Wormuth recommended that the parties' stipulation to extend the deadline for submission of a pretrial report be adopted by the Court, but also recommended no further discovery.   Doc. 644.  Judge Wormuth addressed several factors in concluding that discovery should not be reopened, relying on *Smith v. United States*, 834 F.2d 166, 169 (10th Cir. 1987): (1) whether trial is imminent, (2) whether the request is opposed, (3) whether the non-moving party would be prejudiced, (4) whether the moving party was diligent in obtaining discovery within the guidelines established by the court, (5) the foreseeability of the need for additional discovery in light of the time allowed for discovery by the district court, and (6) the likelihood that the discovery will lead to relevant evidence.

Judge Wormuth concluded that all factors weighed against reopening discovery. Defendant's request for an amended scheduling order that included additional discovery was

opposed both by the Relator, the United States, and a non-party, the State of New Mexico.   He pointed out that trial was six months away and was skeptical of Defendants' optimism as to the expected time frame to complete this additional discovery as "self-serving and unrealistic."  Doc. 644 at 6.

The most significant factor in Judge's Wormuth's recommendation to deny further discovery was his finding that Defendants were not diligent in seeking to reopen discovery, even though any need for additional discovery was foreseeable.   He found that Defendants' failure to promptly seek Court intervention when these late disclosures started coming in waived their right to seek additional discovery as a result of these disclosures.     Judge Wormuth rejected Defendants' claim of "efficiency" as a reason for the delay in seeking to reopen discovery.  He considered Defendants' delay as inexcusable, and stated that he would have recommended granting it, were it not for Defendants' decision to "gamble" by avoiding the expense and effort of further six depositions, in the hopes that they would prevail on summary judgment or settle the case.  He noted that Defendants would still have the opportunity to pose questions at trial to the individuals they now wish to depose, even though counsel would not be prepared for the answers beforehand.   In conclusion, Judge Wormuth made the following recommendations:

> In sum, I find that trial is imminent. All other interested parties oppose and would be seriously prejudiced by permitting the additional discovery. Defendants were manifestly not diligent in seeking such discovery which has been foreseeable for more than a year. Finally, the additional discovery is not so likely to lead to relevant evidence as to override the other factors – all of which weigh against Defendants' request. For these reasons, I recommend Defendants' request be denied.

Doc. 644 at 11.

## II.    Legal Standard

The District Court conducts a de novo review of a magistrate judge's findings and

3

recommendations made pursuant to a referral under 28 U.S.C. § 636(b)(1)(B) and (b)(3).  *See* 28 U.S.C. § 636(b)(1) ("A judge of the court shall make a de novo determination of those portions of the report or specified findings or recommendations to which objection is made.   A judge of the court may accept, reject, or modify, in whole or in part, the findings and recommendations made by the magistrate judge.   The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.").

## DISCUSSION

Defendants claim that all the *Smith* factors except the second weigh in favor of allowing additional limited discovery, basing their request largely on the fact that the Government continued to make disclosures long after the close of discovery in September of 2011 (*see* Doc. 184).   These disclosures can be grouped into two categories.   The first was production of material by the United States (the "Government") and the New Mexico Human Services Division ("HSD"), totaling approximately 111,000 documents.   These disclosures were made as a result of the Court's 2012 Orders sanctioning the United States for spoliation of evidence and granting Defendants' motion to compel HSD's production of evidence which HSD had withheld on assertions of attorney-client privilege and work product.   *See* Docs 533, 538 & 544 (Court's Orders).   The Government produced the compelled materials between November and December of 2012.   HSD made disclosures between August and October of 2012.   The second category of materials was disclosed as a result of Defendants' request through the New Mexico Inspection of Public Records Act, 1978 §§14-2-1 et seq. (IPRA).      Through these materials, Defendants learned that the 2009 Financial Management report ("FMR"), which they were told at the close of discovery was only in draft form, had in fact been completed.   The report described a negotiated resolution between CMS and the State for overpayment of $53 million in federal

money that the State had received as Sole Community Provider ("SCP") funds.    The CHS ("Community Health Service") hospitals, the named Defendants in this lawsuit, were not included in these negotiations.  The FMR also revealed that HSD had disclosed to CMS that it had overestimated the Medicaid upper payment limits (UPL) for more than a decade.  This meant that the State did not properly account for SCP payments made to hospitals and that HSD may have claimed as much as $1 billion in SCP funding more than what should have been claimed had the UPL been calculated properly.

A.    Lack of Diligence

The Court's main concern is with Judge Wormuth's finding that Defendants had not been diligent in seeking additional discovery.    Plaintiffs contend that Defendants could have requested this additional discovery after the bulk of materials were disclosed in December of 2012, following this Court's sanctions orders.  Plaintiffs also contend that reopening discovery would hamper their ability to prepare for the upcoming October 2014 trial and would likely result in a continuance of the trial date.   However, the Court finds that Defendants' reasons for waiting until April 1, 2014 to file their motion for an amended scheduling order to allow additional discovery are cogent and reasonable.

Looking back on the period of time after the close of discovery in September 2011, there was not an ideal time for Defendants to seek additional discovery and to have their request granted by the Court.   Summary judgment motions were initially briefed in March of 2012. New disclosures by the Government continued to come in between August and October of 2012, after completion of this initial round of summary judgment briefing.  As a result of the Court's sanctions orders, another surge of disclosures came between October and December of 2012

after the close of discovery.[1]   While Defendants did not seek further discovery based on the disclosures, they did make use of some of the new material when the Court allowed the parties to supplement the summary judgment record in early 2013. *See* Docs. 567, 570  & 588.

The summary judgment motions were pending for the remaining part of 2013 with the Court conducting oral arguments on the motions in October of 2013.  The Court issued rulings on the dispositive motions in January 2014 (Docs. 616 & 621) after advising counsel orally of the rulings in December 2013.   A status conference was held at the end of January 2014 in which the Court and the parties discussed a possible resolution of the case through mediation. Doc. 625.  At that time, defense counsel advised the Court that additional depositions may be necessary, and the Court stated that a conference would be held to discuss additional discovery if the case did not settle.   Doc. 625 at 2.   The parties pursued extensive settlement discussions before a private mediator and in May 2014, the Court was informed that mediation efforts were not successful.

Plaintiffs argue that Defendants waited for twelve to fifteen months between the time that the Government disclosed all of the material pursuant to the sanctions orders and the filing of Defendants' motion for an amended scheduling order on April 1, 2014 (Doc. 635).   The Court disagrees with Plaintiffs' contention.  This case was awaiting the Court's rulings on Plaintiffs' and Defendants' summary judgment motions or in mediation mode from the time the Government made its late disclosures, until May 2014 when settlement negotiations failed. Defendants filed their motion to amend the scheduling order in April of 2014.   During this time, it would have been neither appropriate nor expedient for Defendants to seek further discovery.

---

[1]  Defendants contend that discovery was coming in as late as April 29, 2014, but it is not clear whether these disclosures were the result of Defendants' September 2013 IPRA request.   If so, the Court does not base its findings on these disclosures, since Defendants did not make the request until September of 2013.

Defendants correctly argue that the Court would not have entertained a request for additional discovery during the pendency of the summary judgment motions.   First, it would make little sense for a party to seek additional discovery when the same party has a pending summary judgment motion asserting an entitlement to judgment as a matter of law because there are no genuine issues of material fact.   Moreover, the Court agrees with Defendants that none of the requested discovery would have been relevant to the summary judgment briefing and would only have served the purpose of adding more factual disputes to a record already replete with them.   Second, a request for further discovery while dispositive motions were pending before the Court would be an inefficient use of judicial resources.[2]   In a complex case like the matter at bar, the Court would not entertain a piecemeal reopening of discovery each time one party discloses new material to the other.   The record had been supplemented twice already – the most recent supplementation as a result of very late disclosures the Government and HSD were ordered to make.   Third, seeking a concurrence from Plaintiffs at the appropriate time for further discovery (as Judge Wormuth suggested, *see* Doc. 644 at 9) would have been pointless in light of the parties' inability to agree on anything in the case.   Fourth, Defendants could not seek a stay on discovery (also suggested by Judge Wormuth) because discovery had long since concluded. The sole reason why discovery continued after September 2011 was because of the Court's sanctions orders against the Government, and the Order compelling production against HSD.[3]

---

[2]   *Chavous v. D.C. Fin. Responsibility & Mgmt. Assistance Auth.*, 201 F.R.D. 1, 2 (D.D.C. 2001) (internal quotation omitted) (even where discovery remains open, courts have stayed discovery pending determination of potentially dispositive summary judgment motions, finding it "is an eminently logical means to prevent wasting the time and effort of all concerned, and to make the most efficient use of judicial resources"); *see also Thornton v. Davita Healthcare Partners, Inc.*, No. 1:13-cv-00573, 2013 WL 5567560, at *2 (D. Colo. Oct. 8, 2013) ("Where a pending motion may dispose of an action, however, a stay of discovery may allow the Court to avoid expending resources in managing an action that ultimately will be dismissed.").

[3]   The Magistrate Judge was reluctant to give Defendants a windfall based on Plaintiffs' prior bad acts.  Doc. 644 at 10.   It is true that Plaintiffs' acts which spawned the Court's sanctions orders occurred in 2012, but it is also true that the fruits of discovery from those orders did not start coming in until *after* discovery closed.   By the time everything was disclosed, the parties were waiting on the Court's ruling on the summary judgment motions.   Thus,

Thus, Defendants did not display a lack of diligence in waiting until April 2014 to request additional discovery.  The decision of the Defendants to wait for the Court's rulings on the dispositive motions and to wait for the outcome of the settlement negotiations was reasonable and when settlement negotiations ended, Defendants wasted no time in filing their motion for an amended scheduling order.

B.     Remaining *Smith* Factors

Having found that Defendants were diligent in obtaining discovery within the procedural confines of this case, the Court's inquiry on the other *Smith* factors falls into perspective.  The requested discovery is likely to lead to evidence that is relevant but not cumulative.  Defendants seek to supplement discovery only since the September 2011 close of discovery and which has not previously been obtained.  For example, Defendants seek discovery pertaining to the final resolution contained in the completed 2009 FMR report.   Defendants seek to depose witnesses who are HSD and CMS employees who purportedly had a role in the FMR report and were involved in the communications that led up to the FMR resolution.   Information based on their testimony is certainly relevant to the Government knowledge inference, which is a critical issue on which liability may turn in this case.   Defendants could not have foreseen the need for such testimony because the Government had previously represented in its briefs that there had been no final resolution of the 2009-11 financial audit.   Defendants did apprise the Court of the possible need for further depositions in late January prior to the beginning of mediation.  *See* Doc. 625 at 2.  The Government argues that the FMR report was a separate and independent action between CMS and the State, and therefore has no bearing on the FCA lawsuit before the Court. However, the Court has a distinct recollection of disputed facts indicating that the Department of

---

Plaintiffs' prior bad acts were responsible not only for the withholding of discovery material, but also for the fact that by the time the bulk of new discovery stopped trickling in by the end of December 2012, the summary judgment motions were poised  for the Court's ruling.

Justice ("DOJ"), which is prosecuting this case, may have involved CMS in the timing for completion and dissemination of the FMR report.  At the very least, there is a factual dispute which suggests the federal agency may have been working closely with DOJ during DOJ's investigation of this lawsuit.  This information is relevant to whether the Government knew of Defendants' alleged illegal conduct concerning the making of non-bona fide donations.[4]

The Court agrees with Defendants for the most part, but does not share Defendants' optimism about the short time in which this discovery can be done.  The difficulties in scheduling of HSD and CMS employees (particularly during the summertime), the need to review pertinent discovery material (estimated to be around 22,000 documents), and of course the inevitability of discovery-related motions—all of these considerations may lead to motions for a continuance of the October 2014 trial date.   On the other hand, the Court would expect a barrage of motions prior to trial even without additional discovery, and the Court finds that allowing Defendants some limited discovery is appropriate under the *Smith* factors as well as in the interest of fairness.    The Court and the parties will just have to see how all of this shakes out.

---

[4] Based on the parties' discussions at the June 6, 2014 hearing, discovery related to the FMR report and the individuals who Defendants seek to depose, may also be relevant to a calculation of actual damages—and indirectly, to the calculation of damages in the event the jury finds that Defendants violated the FCA.   *See* Hrg. Tr. at 37-41. This discussion broached the issue of the proper trebling of damages.  The Government cites the case of *U.S. v. Bornstein*, 423 U.S. 303 (1976), for the proposition that in FCA cases, the jury finds actual damages, trebles them, and then any compensatory third-party payments are subtracted.   This appears to be the correct method of damages calculation under the FCA in the context of third-party compensation.   While Defendants cite *U.S. v. Anchor Mortgage Corp.*, 711 F.3d 745 (7th Cir. 2013) as a counter to *Bornstein*, the Court does not consider the holdings of these two cases to be in conflict because the *Anchor Mortgage* case does not appear to involve or address payments from a third party.    The reference in *Anchor Mortgage* to "footnote 13" in *Bornstein* was simply an instruction to the parties on how to calculate actual damages, i.e. subtracting the market price (without fraud) from the total price paid with fraud.  *Anchor Mortgage* did not contest any part of the holding in *Bornstein* which explicitly states that third party payments should not be subtracted from total damages before trebling.   Therefore, both cases support the premise that actual damages are calculated first, and then they are trebled.  *However, only Bornstein* addresses the situation involving third-party payments, and holds that these payments are subtracted only after actual damages have been trebled.  The Court envisions that this issue may become germane regarding the admissibility of certain portions of expert witness testimony which will likely be addressed by the Court when *Daubert* challenges are raised.

## CONCLUSION

In sum, the Court finds and concludes for the reasons stated in this Memorandum Opinion and Order that Defendants' objections to the Magistrate Judge's recommendation denying their request for additional discovery have merit and are sustained. As stated at the hearing, the Court intends to keep the October 2014 trial date although that trial date could change. Should there be a need to continue trial, the Court will reserve the month of October for hearings on pending pre-trial motions.

**IT IS THEREFORE ORDERED** that Defendants' Objections to Magistrate Judge's Report and Recommendations **(Doc. 645)** are SUSTAINED;

**IT IS FURTHER ORDERED** that the Court rejects the Magistrate Judge's Report & Recommendation;

**IT IS FURTHER ORDERED** that this case is referred to Judge Wormuth in order to issue an Amended Scheduling Order after meeting with the parties. Prior to meeting with Judge Wormuth, the parties are to do the following:

(1)     Defendants are to formally submit to Judge Wormuth by way of pleading an enumerated list of the additional discovery they request, LIMITED TO THE SIX DEPOSITIONS and SUPPLEMENTATION OF THEIR EXPERT REPORT, as described in their motion, Doc. 635. Defendants need to be particularly specific about the information they will be requesting for the Rule 30(b)(6) depositions.

(2)     At the hearing, Plaintiffs orally represented to the Court that they would be requesting additional discovery, in light of the Court's decision to grant Defendants' request. Plaintiffs shall also formally submit to Judge Wormuth, in specific and enumerated fashion, the discovery they are requesting. Based on that submission, Judge Wormuth shall determine what,

if any, additional discovery will be allowed for Plaintiffs.    The fact that Plaintiffs want additional discovery is no guarantee that Judge Wormuth or the undersigned will allow such discovery and if any is allowed, Plaintiffs can be assured that it will be narrowly tailored such that it is necessary and responsive to the additional discovery afforded to Defendants.

(3)    Parties shall electronically file their required submissions **WITHIN TEN DAYS following entry of this Memorandum Opinion and Order.**

_____
UNITED STATES DISTRICT JUDGE